Our first case is Cioffi v. Google, 18-1049. Mr. Counselor, differential, you reserve four minutes of time for rebuttal. Is that correct? That's correct. Okay, sir, you may begin. Good morning, Your Honors, and may it please the Court. The reissue claims that are asserted here fail the original patent requirement under Section 251. Each one requires using two web browser processes, but that was described nowhere in the original 247 patent. Now, this is not a Section 112 issue where courts can and do rely on expert testimony to determine whether a person of ordinary skill in the art reading a patent specification would infer or understand that the applicant possessed the later claimed subject matter at the time of filing. Here, Section 251 requires more than that. Doesn't the original patent disclose two logical processes? It does disclose two logical processes. And is it undisputed that a logical process encompasses an internet browser? Yeah, the evidence was that a logical process can be just about anything that a computer does. It's literally any process. And in this case, disclosing two logical processes, which could be anything, is not enough to provide the clear and explicit and unequivocal disclosure of two web browser processes, which is required in this case when it's a reissue patent under Section 251. Does it have to be that clear on its face, or cannot a person of ordinary skill in the art use logic to deduce that both of the logical processes encompass a web browser? So I think under Section 251, under the original patent requirement, the Supreme Court has said that that's not enough. The Supreme Court said it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. And the court talked about how expert testimony cannot be used to inform what the document means. It may be used if there's something like a dispute over or a question about what a technical term actually means, what the document actually says. But as far as what is disclosed in the specification, this court in Antares said that it has to be clear and unequivocal and explicit as a separate invention. So I read that case as saying it actually has to be called out specifically in the specification to satisfy the original patent requirement. But not necessarily in particular words. That is, if it were clear and unequivocal from the spec as a whole that descriptions of first logical process having direct or, through the second logical process, indirect access to the web, that would be enough, even though it didn't use the term web browser, although it uses the term browser and web and names a couple of web browsers, you know, repeatedly. I think if that specific configuration was clearly and unequivocally and explicitly called out, that would be enough. Here, what the district court did and what plaintiffs have relied on is a series of inferences saying, you know, that it says a logical process, that could be a web browser process. So if you pull that in here and it also says a processor, well, that could be a process. If we pull all these things together, you know, could be, might be, should be, a person of ordinary skill in the art might think that. That's not enough. You know, it could be a closer case. I guess it seems to me that this sort of the pulling together notion we often see in the context of reading a piece of prior art that has different things in different places and some works needed to be done to put the things together. But I guess my reading of the 247 was that there's a pretty clear description of a logical process with indirect access to a network and repeated descriptions of the variety of networks that that can be, the gaming, the web, and that there's not really any work to be done to put those things together. Tell me what's wrong with that view. Well, so if you look at the original patent specification where it talks about, I think what you're referring to is in column six. Well, I'm actually referring to the entirety of the thing. Okay. Starting from the description of here's the general problem and millions of people are now getting, going over networks. That's basically the web. That's where the millions of people are, not on other networks. They're downloading stuff so that we're talking about the normal mass use of processors connected to and processes running on processors connected to the web with all of its dangers. And I think that's kind of set up at the beginning. And then there are a variety of specific embodiments. Number six and then whatever the modification is in number nine with different columns. That's sort of the picture I come away with. So I think it's important to understand, first of all, that there is discussion of networks generally in the specification. That is what is generally discussed when they're talking about this invention. It's networks. And at appendix 4858, there was testimony, and I think this was undisputed, that a network is not just the web. That's one type of network, but there are lots of other kinds of applications in my user network. File sharing, email, texting, basically any of the dozens and dozens of apps on my phone that are not a web browser are all using networks. So web browsing with website information is one slice of a network. So to the extent that we're relying on generic discussions of networks. Was there any evidence in the case about apps and the timing of this? This dates to what, 2004? 2004, I believe, yeah. How common were apps at the time? I believe smartphones were around by then. Barely? Maybe barely. Yeah. But certainly email was around. In 2004, if I read something that says there are millions and millions of people out there on networks doing all kinds of things, how could that not be a reference to web browsers? But unlike maybe today where apps have, for many, many uses, substantially displaced, at least in numbers, in amounts of time, web browsers. Well, again, I mean, still even then, a network was just a connection of two or more computers together. So file sharing was certainly around. Well, gaming would be. Gaming was around, absolutely. A form of network interaction. Yep. And in the specific part of the specification, column 14, which is what the plaintiffs rely on primarily to try and show sufficient disclosure here, what's discussed there is interactive network processes. And gaming is the only example provided there. Everything is referred to in the lens of gaming. And that is a context where, again, talking about interactive network process data, it's talking about a game where computers are either connected to other peers or to a host and there is rapidly changing information that's going back and forth. Like, you know, where is Mario now in the game? And that makes sense that there would be this kind of constant sharing that's talked about in figure six and in column 14. That doesn't make as much sense in the context of a web browser where the web page is basically static, especially in 2004. So the fact that this particular embodiment that is actually explicitly and unequivocally described talking about gaming does not include web browsing is important. And furthermore, this very thing came up during prosecution of the reissue patents. And the applicants specifically distinguished web browser processes. They amended to put in web browser processes to distinguish gaming, which was in the prior art that was at issue at that time. So, again, here relying on this particular specification, the only thing that's clear and unequivocal and explicit here in column 14 is gaming. And that was called out as being very different during prosecution. And it makes sense that it's a different thing in the context of what they're talking about here. Can I ask you a question? If the red brief says that its expert, I think at page 4425, its damages expert, said same damages regardless of how many of, I think he said three patents. Let's just translate that for a moment into each of the four claims. Do you dispute that? If we were to find one patent survived your several arguments, would we have to reach one claim? Would we have to reach the others? No, we're not disputing that particular point at this point.  So claim five of the 528, for example, would be enough to support the judgment? Yes, that's not disputed anymore at this point for purposes of the damages judgment. That's right. Since you're on a brought up expert testimony, I wanted to touch on that briefly as well. The plaintiff's case here and the district court's reasoning all depends very heavily on testimony from the plaintiff's expert. This is Dr. Dunsmore? Dr. Dunsmore, exactly. About what a person of ordinary skill in the art would have understood or inferred from the specification, not about what is explicitly there. And that's consistent throughout the red brief. It's consistent throughout the district court's opinion. If you look at appendix 51 to 54, that's the focus of all the conclusions that the district court makes. And I would submit to you that that's improper under the Supreme Court's decision in industrial chemicals. And under this court's decision in forum, it's using that testimony in exactly the way the Supreme Court has said the courts are not supposed to, which is determining what was suggested or indicated, what the document means, rather than just resolving a question about a technical term. Well, let me ask you about Dr. Dunsmore's testimony. Because Judge Gilstrap relies on Dr. Dunsmore's testimony in part. And he says at 5044, the bottom of 5044, that do you agree with Dr. Kogan that the specification does not disclose the use of two web browser processes? He says no. And then he goes on to say that accessing website data, this is in response to a question. The question is, does P2 and P1 accessing website data meet the definition, the court's definition of what a web browser is? And he says, yes, it does. And then concludes that there's an adequate disclosure for purposes of the original patent requirement. Is it your view that there's a, he's simply A, wrong, or B, that this testimony does not go far enough to actually satisfy the clear and unequivocal requirement? So I would say both, Your Honor. So I would urge that this testimony is improper in the context of Section 251 to pull out what, again, what one of ordinary skill in the art like Dr. Dunsmore would infer or understand from the specification. Again, this is not a case where the analysis is taking an expert's eyes and squinting at the page to read between the lines. It should be looking at what is actually written on the lines on the page. But even if you were to think this is a proper thing to consider, I don't think that this particular testimony, and this is something that's relied on heavily in the red brief, I don't think that it gets there. Because if you look at what he says, he says, I disagree because of the things that are highlighted here. He says, here we have two processes, P1 and P2, and both of them are retrieving data from the network. And as we discussed earlier, the network is not a website. That is a generic term that could be any number of things, including website data, but lots of other things, too. And from that, he concludes, and that's exactly what needs to be done by a process of a web browser. And the next question, maybe this is a case of the lawyer jumping over that distinction. But the lawyer then moves to, and does accessing website data meet the definition, the court's definition? And he says, yes. And I take it your argument is that he hasn't made the connection between network and website. The lawyer has in his question, but the expert has not. That's exactly right, yes. I mean, it is true that accessing website data meets the definition, but it does not. He hasn't said that accessing website data is what's going on here. Exactly, yes. It doesn't follow, but this conclusion in the prior sentence doesn't follow from what he said. Okay. Any other questions? Counselor, you're into your rebuttal time, and we've used up most of your time, but I'll restore you back to your original time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Christian Hurt, and with William Davis, Eric Benesik, and Rich Vasquez, I'm here today on behalf of Mr. Chaffee and the Rosman family. We also have one of our clients in the gallery today, Morgan Rosman. Since the discussion was about the original patent issue, I'd like to focus on that issue. I think Your Honor's questions about logical process really gets to the heart of this issue and the disclosure in the patent. So the patent undisputably discloses two logical processes that can access a network, as Judge Toronto was mentioning. And a web browser process is not some undisclosed species of that or something that we're having to make up. It's actually expressly in the patent in a number of places as a web browser program and specifically as part of the second logical process, and that's in column 16 of the patent. And indeed, in the first appeal of this case on the claim construction issue, in describing figure one of the patent, the court called the logical processes their web browser processes. And the reason is in part for what Judge Toronto mentioned is in 2004, when you're interacting with a network, web browsing is the way that you do it. And in fact, in part of the patent in column 6, it mentions three flavors of interactive applications. And one of them's browsing. The other one's gaming, and the other one's instant messaging. And so I understand Google's argument in part to be, well, when you get to column 14, we should have just copied that exact disclosure three times when we talk about interactive network processes because the one example in the lead-in is gaming. But no one would read the specification that way. The evidence the district court relied on is that particular embodiment covers those interactive network processes, and I believe it's undisputed that one of them is web browsing. But I take it that if all – set aside the references to web browsers for a moment. And if all that was present in the 247 patent was a reference to logical processes, that that wouldn't be enough simply because web browsing is encompassed within the scope of logical processing. I do agree with that. I take it. Well, I think in a normal case, perhaps, it's not this case for two reasons. First is web browsing is expressly disclosed in the patent. But more importantly, even if that weren't true, Google below, their invalidity expert, equated a logical process to a web browsing process. And the district court made that finding in its order and that I don't believe is challenged on appeal. So your Honor's hypothetical – If I remember right, correct me if I'm wrong, the Gray brief, Google's brief, said, I think in a footnote, equated is not what was in fact said. All he said is it's within it and that the species is within the class and the genus. And therefore, that's all you need if you're doing prior art analysis. I didn't go back and look at the specifics. Sure, Your Honor. That is the argument in the Gray brief. This is at appendix 4780 to 81 is that actual testimony. And Google is correct that it's in the context of prior art. And what their expert could have said is what Your Honor mentioned. Well, a web browser process is a species of a logical process. And for prior art, I just have to find the species. But instead, what I believe it was Dr. Kogan testified to was not that. It was he said it's the same. So the question was, what about the first logical process that is required here in the claim? It's the same as the first web browser process. Now what Judge Gilstrap said, and this is I think at 53 in conclusion of Law 27, says if a person of ordinary skill would recognize that the 247 patent specifications disclosure of a first logical process encompasses a web browser process, then narrowing the disclosed logical process to directly claim a known subspecies is clearly and unequivocally within the scope of the original invention. Now it seems to me that that is on its face looks like an unduly broad characterization of what's required for the original patent requirement. It isn't enough to say that something that encompasses a subset, therefore clearly and unequivocally describes the subset. Would you agree with that as a general matter? I would think that would be right in the context of when all the other cases arise and when you're doing a broadening reissue, right? So in Tara's, the Supreme Court's case in U.S. Industrial and Forum, the aspect where the question was where is the clear and unequivocal disclosure was with something that had been broadened. And here we're talking about something that's been narrowed. Really there are no cases that go from genus to species and say as in prior art law is common, the fact that a genus was disclosed in the prior art doesn't immediately teach all the species. The three cases, there is not a Federal Circuit case on that point that I'm aware of. The two that are cited are in Tara's and Forum. But the kind of obviousness law or even anticipation law that I was just referring to would suggest that it's not always clear and unequivocal as to a species that is not otherwise called out that fits into a genus. That's right. And that's true in the written description context, right? So if there's a disclosure of a broad genus, there can be times in a 112 area where trying to claim a species later on doesn't have written description support. And I think that would equally apply in the original patent doctrine. Or even a fortiori since presumably clear and unequivocal disclosure is narrower than the kind of disclosure required for written description. I believe that's right. But the difference in this case to Judge Bryson, your Honor's question, is here the term the court used in encompassing, we're not talking about a chemical case where there's a million potential species that fall with under a genus.  Aren't you... Yes, Your Honor. ...certain predictive talents that's not generally available to a poseta, especially in view of our case law. For example, it must appear from the face of the instrument that what is covered by the reissue was intended to have been covered. Here it seems to me that perhaps you're saying that a poseta through logic and further research can arrive at a determination. But I'm not too sure that that's the case with the original patent requirement. It seems to me when we say it's clear and unequivocal, that you have to be able to see it on the face and not further divine the claims. I agree with that, Your Honor. I think in here you do see it on the face in three different ways. I mean, the most specific, which the district court relied on, was in column 14 in connection with figure six. Even though web browsing isn't called out in column 14, it's also... I mean, no specific is called out in figure six. Correct. It's perfectly general, and the one more or less concrete example discussed in column 14 is gaming, right? That's correct. I have two responses to that. The first is in column 14 the term is interactive network process. The patent tells you, and I don't think this is disputed, there's only three of those, instant messaging, gaming, and web browsing. I believe counsel conceded there's no word-for-word requirement. A person of skill in there would read that section in column 14 and know that it's applying to those three very small species. And then the second point on gaming is there's no... the district court, and you can see it in the column, it's not limited to gaming. But even if it were, both Google's own documents and Mr. Chaffee's testimony say that there isn't this artificial distinction where web browsing and gaming can't be the same thing, and the distinction, because most games at that time, especially, were played through web browsers, and the issue is the same issue, and that part of the prosecution history that counsel relies on doesn't make the distinction on gaming. It's about access to the Internet. But ultimately what Google's position... That's the prosecution history on one or more of the reissues. Correct, relating to the... You can eliminate gaming without conceding that gaming and web browsing are non-overlapping categories. Right, so in the prosecution history, the distinction was that in NARIN, the process couldn't access the network, and the patentees made that clear by putting in web browsing process. But the fundamental point of Google's argument is that the word web browser is not in column 14. The law doesn't require that. And what is there is interactive network process, and the three flavors of that, and we're not talking about a million compounds, the three flavors of that are messaging, gaming, and web browsing. Can I say that? Yes, John. This discussion of the very small number of these things is putting into my mind the Kenna Metal case in anticipation law, where I think we have said, that sometimes you can have a category that is so small and clear that it actually does, for anticipation purposes, teach to any reader, the relevant reader, every one of the items that is under that small category. Is something like that a proper way to think of this? I do think that's certainly one way to think about it. I mean, the term web browser process was construed as a process that can access data on websites. One way, the most narrow way to look at it is in column 14, where that's disclosed. The web as a network is disclosed in column 10. That's certainly one way to look at it, especially under the lens of when we're looking for disclosure, and we're going from a broader claim of logical process to a narrower claim of web browser process to see what is actually disclosed in the patent. And there's only three members of that interactive network processing class, and from a practical... I'm sorry, go ahead and complete your thought. I have a question. Sure. From a practical perspective, it really doesn't make any sense for why Mr. Chalfie would have to literally cut and paste that paragraph three times, once for gaming, once for web browsing, and once for instant messaging, because those of skill would read that and know the point of this patent is predominantly focused on browsing the web and that a web browser is one of a small set of species in column 14. Well, to the extent that what you're arguing is that at the time there were very few species of logical processes of the sort that this patent is addressed to that didn't involve web browsing, is there any evidence to that effect? I mean, this is an argument, at least it's a variant, I suppose, of an argument that is made in the briefs, but it's a new variant as far as I can tell, and I was not aware of anything either in the patent itself or elsewhere in the evidence that suggested that there's a very small set of species under the logical processes category. Sure, Your Honor. I mean, if I go back to first principles, this is an affirmative defense that Google has got to raise, so it would be on them to show that. All that Google was able to point to was there's dependent claims in the original patent that I think limit a logical process to maybe six or seven things, like a word processor, Adobe Acrobat, gaming, messaging, browsing, there's a few like that, and that's for logical process. So that's the universe. The most anyone's identified is those, I think it's seven or eight, it's in one of the dependent claims. But then when we get to column 14, we're going even narrower to interactive network process, and for those, I believe it's undisputed, there's only three, and it's messaging, gaming, and web browsing. And that column six tells you that in the patent. And more specifically, the patent tells you in column 16, it specifically identifies a web browser as a logical process. So we're not relying on the fact that this is a small genus or a small number of species, and the one we're trying that's being claimed in this narrower sense isn't disclosed. I mean, it's expressly disclosed multiple places in the patent. The issue that Google has with column 14 is the exact words are not listed as part of an interactive network process, but the patent already tells you in column six that that's one of the three flavors. Can I switch topics? Yes, sir. I know we have not talked about recapture. Can you – I found it a little hard to understand what your theory, why there's no recapture from going from the original 609 application covering one processor to the 247 claims covering two, and then back in what two of the – in the two product claims that are at issue here, going back to one? Yes, Your Honor. I can address that issue. And I can see where the confusion may arise. But it comes down to what the district court found was an uncontested fact that the original claims required isolation of the first processor. And when you say original claims, you mean the 609 applications claims? Correct. Both? Both. Correct. So the original application claims, as well as the actual claims that issued in the 247 patent, both the district court concluded, and I believe part of it was based on Google's expert testimony and the court's review of the patent, that those claims require that the first processor was isolated from the network. I don't believe Google challenges that finding on appeal. But once you have that finding, it has two major consequences. The first is the overlooked aspects issue, because the ultimate claims in the reissue are – so once you realize that the claim was limited to isolation, all the narrowing that happened with regard to Corthell and going from one processor to two processors, it happens in that universe. But in the reissue claim, it's over here in a different area where the first process has to be able to access the network. And so the consequence of that is, for overlooked aspects, it's a separate embodiment that's not initially covered by the patent. Google's argument is, well, you covered logical processes in the first claims, which is true, but the requirement of isolation means it couldn't – those logical processes couldn't – the first processor couldn't be a web browser process because the web browser has to be able to access the network directly or indirectly. And so we're in a different embodiment, and that's part of the district court's overlooked aspects argument or holding. And then the consequence of that same finding on the scope of the claims in the original patent also applies to material narrowing, because – and the judge did this, I think, sort of as belts and suspenders and said, well, let me take Google at their argument that the plaintiff went from one processor, which is broader, to two. And I'll take that as, you know, it was a narrowing amendment and that it surrendered that. Well, if you look in the context of the arguments that were made as part of the amendment, the reason from going from one processor to two to get around Corthell was to add that additional physical isolation. So it's tied to the first processor is isolated. And that the amendments in the reissue – I'm sorry, the reissue claims are a material narrowing related to that, because now instead of having a processor that is isolated or a process that is isolated, both processes have to be able to access the Internet. And that's the tie-in. It's a different – it's an unusual situation, but it all goes back to what does the – what the district court held was the scope of the original claims. Thank you. Thank you, Your Honor. Counsel, we're going to restore you back to your four minutes of rebuttal time. Thank you. So I had a few things I wanted to touch on, but I'm, of course, happy to answer any questions, too. First of all, counsel talked a lot about logical processes and pointed to column 16 where the patent specification discusses logical processes. It's important to remember that these claims we're talking about require two web browser processes. Where web browser process is described or talked about in the specification, every single time it's just one. Column 16, that's the case, and I believe at column 10 that's the case as well. It's just one web browser process. There's never any discussion or description of two web browser processes, which is what is recited in these claims. Counsel also talked about there only being three flavors of interactive network processes. I believe counsel referred to column 6 when discussing that particular point, and if your honors look there, this is at, like, lines 15 to 20, what it says is the interactive nature of many applications, such as gaming, messaging, and browsing. So it's not like this is just a limited, just these three kind of a disclosure. It talks about many, many different things. Here are three examples, and the browsing example is not discussed later on in column 14 where the plaintiffs are really trying to find disclosure for these claims. So I take it your position is that the clear and unequivocal standard, which is a gloss on the Supreme Court's language, actually heightens it, but I don't take it that that standard is in dispute. We've relied on it a couple of times now. That that is not met, even in a situation where some genus-type language would be recognized immediately as occupied, I don't know, 97% of its territory by three things, some of which are referenced throughout as kind of indistinguishable one from the other, even if that genus is not limited strictly to three. That's just not enough that the big and obvious, or one of two big and obvious, or one of three big and obvious examples is just not enough for each of those examples to be clear and unequivocal. I think that's right. It's not enough for it to be obvious. This is not written description under 112. Under Section 251, this is a different standard and a much higher bar. And I would direct the Court to Antares. At the end of that opinion, I believe on page 1363, there's some discussion in that case about the safety features that the patentee was attempting to claim on reissue. And the Court says there is some reference to these in the specification, but that was not enough because nowhere in an explicit and unequivocal manner were the particular combinations of safety features claimed on reissue described separate from the invention that was in the original patent. I think that decides this case. It's the same thing here. There's no separate, explicit, clear, unequivocal description. Everything that the District Court relied on that plaintiffs point to is, if this, then it could be that. And stacking those kind of inferences together, that is by definition equivocal. It could be this, it could be that. That's not good enough under Section 251. For purposes of 251, can we assume that a posseda understands all the subspecies that would fit under a particular genus? Again, I'm not sure that the posseda's view is the correct viewpoint here. This is supposed to be for the Court, reading what's actually clearly unequivocally described on the page. So I think this is not the situation where the proper analysis is to go in and think about what a posseda would glean from what is there on the page. I think it has to be there directly on the page. What about just pure logic? Can a posseda say, we have this here and this equals this, and therefore I have that? Not the same thing. If a posseda engages in logic similar to what we've heard some of these arguments, is that clear and unequivocal? Well, again, the Supreme Court in Industrial Chemicals said it's for the Court to do that itself, or the Court to decide for itself whether it's there. Under Section 251, to satisfy the original patent requirements. So I think it's sort of beside the point what a posseda would see or think. Can I ask just one question? Could you comment on Mr. Hurte's discussion of the second issue, the surrender, the... Oh, the recapture, Your Honor? Recapture, right. Yes. So counsel talked about how there was a link, and I think this is what the District Court thought too, in the District Court's opinion as I read it, that there was a relationship or a link between the narrowing to two processors or more during prosecution and then the requirement for web browser processes during reissue. Right. And I think if you look at the claims in the original application and in the 247 patent and even in the reissue patents, the kind of isolation that counsel's talking about is not really what's claimed. It's not about isolating a processor at any stage along the way. It was about isolating a memory. Protecting this first memory that has the system files, that's the gist of the invention, is having this protected memory that's isolated. It's not about the processors being isolated. The original application claims achieved that memory isolation with one or two processors. The applicants went to two processors during the original prosecution to get around prior art that had one. And then on reissue, the claims now again cover one or two while still achieving this isolation that is the gist of the invention. That is just physical separation of the processors. Right. Okay. Thanks. Any other questions? No, thank you. Thank you, Counselor. Thank you, Ernest.